IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                             No. 22-CR-191-JB

MICHAEL COBB,

        Defendant.

**MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

        Michael Cobb, through his undersigned counsel, Assistant Federal Public Defender, Daniel Snyder, moves this Court to suppress all evidence that law enforcement seized when they searched the car he was driving. This motion is based on the Fourth and Fifth Amendments to the United States Constitution and Rules 12(b) and 41(h) of the Federal Rules of Criminal Procedure.

        **A.**     **Factual background relevant to the motion.**

        Mr. Cobb bases his factual recitation on the discovery materials he has received from the government. He requests permission to supplement this motion and to raise any other motions and arguments based on the facts and evidence that may be revealed during any pretrial hearing and trial held in this case.

        After money was taken from an ADT technician who had opened Century Bank's ATM machine, law enforcement began tracking a license plate attached to a car belonging to G. Cobb. Officers interrogated G. Cobb who told them that the car was his wife's. He thought perhaps their son, Michael Cobb, was using it. He was

unsure whether M. Cobb's mother had sold or lent him the car. Because the license plate was entered into the Target Alert System (TAS), law enforcement could track the car's whereabouts.

When officers put that plate into the tracking system, they did not know who took the money from the technician. In the video of the incident, that person wore a surgical mask which covered part of the face. That person also wore a cap and glasses. According to law enforcement reports once officers decided G. Cobb was not involved, M. Cobb became their suspect.

Apparently, from data collected by TAS, officers were able to monitor the car's whereabouts. Four days after the technician incident, they knew it was parked at Buffalo Thunder Resort. When they descended on it, the driver left the parking lot. The officers followed with their emergency lights and sirens on. Eventually, they stopped the car by slamming into the passenger side rear panel. With guns drawn, officers pulled the driver from the car, put him on the pavement and handcuffed him. The driver was M. Cobb. Later agents decide that he was the person who took the money from the ADT technician. Soon after, Byron Abeyta, an FBI task force officer, drafted a search warrant affidavit for the car and Mr. Cobb's belongings. Dft. Ex. A.

In that affidavit, Officer Abeyta described the interaction with the technician, law enforcement's pursuit and arrest of Cobb, and the bank's vice president claim that $187,340.00 was taken from the technician. He added that "[a]gents compared photographs and video from the Century Bank to photographs of Michael Cobb at

the scene." The person in the video purportedly "matched" Cobb's build, "the mustache" and "glasses recovered at the scene." Abeyta did not describe the photographs the agents used for comparison or what, if any, identification procedure was followed.

Abeyta asked the magistrate judge to authorize the search "of the entire vehicle, all storage areas, and containers." He also requested that he be permitted to seize "any and all computers and storage media that reasonably appear to contain some or all of the records, information, and/or evidence described in Attachment B." Abeyta explained that by "records" and "information" he meant "all forms of creation or storage, including any form of computer, digital media, or storage media." He clarified further that "smart phones . . . iPhones, iPods, iPads []  and cellular telephones would be considered "digital media."

No one alleged any electronic device was used when the money was taken. For example, the technician did not say the robber recorded the incident on a cellular telephone or played a recording demanding the money. Further, Abeyta's affidavit did not allege that M. Cobb had a computer or any "digital media." It also did not say that anyone had seen M. Cobb with such devices. Still the magistrate judge signed the warrant authorizing Abeyta to seize such items. Law enforcement then searched the car and found evidence the government intends to use against Mr. Cobb at trial.

B.     **Argument**

1.     **The warrant to search the car was not supported by probable cause**.

A warrant must be supported by probable cause to believe that evidence of a crime will be found in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In other words, the officer's affidavit must include enough facts to demonstrate why he reasonably believes that certain evidence will be found in a particular place rather than somewhere else. The Fourth Amendment requires particularity in order to ensure "that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

"Probable cause to search a person's [property] does not arise based solely upon probable cause that the person is guilty of a crime. Instead, there must be additional evidence linking the person's [property] to the suspected criminal activity." *United States v. Rowland*, 145 F.3d 1194, 1204 (10th Cir. 1998) (citing *United States v. Hendricks*, 743 F.2d 653, 655 (9th Cir. 1984)). In other words, there must be a nexus between the two. *United States v. Corral-Corral*, 899 F.2d 927, 937 (10th Cir. 1990) ("Probable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched."); *see also United States v. Roach*, 582 F.3d 1192, 1200 (10th Cir. 2009) (affidavit must show nexus between suspected criminal activity and place to be searched); *United States v. Lalor*, 996

4

F.2d 1578, 1582- 83 (4th Cir. 1993) ("residential searches [are] upheld only where some information links the criminal activity to the defendant's residence").

Here, Abeyta asked for authority to search "the entire vehicle," including "all storage areas and containers." Yet, his affidavit lacked the facts necessary for a prudent person to believe that there was a fair probability that evidence from a robbery would be found inside the car M. Cobb had been driving. After all, four days had passed from when money had been taken from an ADT technician. If the TAS notified law enforcement of the car's whereabouts during those four days, they would have known the money could have been taken out of the car. And even if they did not know its precise location, it still was reasonable to expect that the money no longer was inside.

Indeed, Abeyta had no evidence that any money stayed in the car during that time. When officers stopped the car and pulled Cobb out, it was at over ten miles from where the money was taken. Inside the car, no officer saw the money cassettes that were taken from the ATM technician. Missing from the affidavit then is any specific, particularized objective fact establishing that the money taken from the technician would be found in the car, let alone in any container inside the car. Put simply, Abeyta's affidavit did not explain why it was reasonably probable that $187,340 would still be in the car.[1] He merely suggested it would be but that

---

[1] Notably absent from the affidavit is any confirmation that the bank gave law enforcement the serial numbers of the money in the ATM cassettes. Irrespective of whether any money found in the car was from the cassettes, Abeyta asked for and was given permission to seize it.

5

"sheer speculation" is "of minuscule value." *United States v. Cordova*, 792 F.3d 1220, 1225 (10th Cir. 2015).

Abeyta's contention that "agents" believed Cobb was the person who took the money from the technician is equally problematic. He wrote their conclusion was based on comparing photos and video with photos of Cobb after he was arrested. First, Abeyta's affidavit lacks any specificity or detail describing the photos and video which the agents purportedly viewed. Nor did Abeyta attach photos to the affidavit. Without the images or their detailed description, the magistrate judge could not independently assess whether there was reasonable cause to believe that the person at the ATM was Cobb.

The Fourth Amendment requires more than what Abeyta provided here. A court must "conscientiously review the sufficiency of affidavits on which warrants are issued," to ensure that the magistrate renders a truly independent decision and not merely a "ratification of the bare conclusions of others." *Gates*, 462 U.S. at 239; *see also, Johnson v. United States*, 333 U.S. at 10, 13-14 (1948) (inferences drawn from evidence must be made by neutral and detached magistrate, not "the officer engaged in the often competitive enterprise of ferreting out crime."). For the magistrate to perform this crucial "neutral and detached" role, she must be given "sufficient information to support an independent judgment that probable cause exists for the warrant." *Whiteley v. Warden*, 401 U.S. 560, 564 (1971). Therefore, when, like here, the officer's affidavit does not contain a detailed description of an image or the image itself, the magistrate cannot make an informed decision as to

whether a fair probability exists that the person whose property the police want to seize is the person who would have that property.

Without more, the agents' identification was merely a subjective, conclusory remark and insufficient to establish probable cause. To be sure, photos and video from the ATM do not make it evident that Cobb is the person who took money from the technician. The agents' claim that the men had matching mustaches is unsupported. The person at the bank wore a cap and covered his face below his lower lip. Because portions of that person's face were concealed, they could not be compared with Cobb's face and head. The robber's mustache clearly extended beneath the mask but how far it extended and whether it connected to any facial hair on the chin, the agents could not say. Therefore the agents could not accurately assess whether the men's mustaches matched.

The same with the glasses. The person at the ATM wore tortoise shell glasses on his face, while the glasses to which they were compared were black, broken and lying on the road. The agents' claim that the men's build matched is equally questionable. The person at the ATM appears lanky and of modest stature. Cobb looks more muscular and taller. Given this unconvincing assessment, the magistrate judge should have been able to evaluate for herself whether the photos demonstrated that both men were Cobb. Since the magistrate judge lacked the information needed to make an informed decision, she necessarily abdicated her independent and detached judgment to law enforcement. *See Wong Sun v. United States*, 371 U.S. 471, 481-82 (1963) (magistrate must "assess the weight and

7

credibility of the information with the complaining officer adduces as probable cause.").

Indeed, the Fourth Amendment expects the magistrate judge to independently determine the existence of probable cause. *Whiteley*, 401 U.S. at 564. Before signing the search warrant, the magistrate judge had to decide whether there was a substantial basis for concluding that the search would likely uncover evidence of wrongdoing. Thus, Abeyta's affidavit needed to show a close nexus between the alleged criminal activity and the property to be searched and the items therein to be seized. That connection could be made only by establishing that the person who took money from the technician was Cobb. But certain gaps in the officer's affidavit should have raised questions for the magistrate about whether that connection had been proven. For instance, who were these "agents" who compared the photos? What photos did they compare? Did they see the person at the ATM? Had they arrested Cobb? Did they follow identification procedure protocol? If so, was that procedure tainted by the agents' apparent awareness that Cobb was the only suspect? If they did not follow any procedure then, how likely was it that their identification would produce an objective and reliable result? *See, e.g.*, *Stovall v. Denno*, 388 U.S. 293, 302 (1967) (identification procedures which are so unnecessarily suggestive and "conducive to irreparable mistaken identification" violate due process), *overruled on other grounds by Griffith v. Kentucky*, 479 U.S. 314 (1987). Without answers to these questions, the magistrate could not make a "practical common sense decision" that Cobb was the person in the ATM photos.

*United States v. Tuter*, 240 F.3d 1292, 1295 (10th Cir. 2001). In conjunction with the lack of reasonable cause to believe the car contained money taken from the technician, there was no legal basis for the magistrate judge to issue the search warrant.

  **2.  The warrant is overly broad**.

  The search warrant also was overbroad. The Fourth Amendment requires that warrants "particularly describe . . . the [] things to be seized." U.S. Const. Amend. IV; *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). A warrant with "indiscriminate sweep" is "constitutionally intolerable." *Stanford v. Texas*, 379 U.S. 476, 486 (1965). "The particularity requirement ensures that a search is confined in scope to particularly described evidence related to a specific crime for which there is demonstrated probable cause." *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985). "[T]he fourth amendment requires that the government describe the items to be seized with as much specificity as the government's knowledge and circumstances allow and warrants are conclusively invalidated by their substantial failure to specify as nearly as possible the distinguishing characteristics of the goods to be seized." *United States v. Leary*, 846 F.2d 592, 600 (10th Cir. 1988) (internal quotations omitted).

  Here, the warrant authorized the search of all electronic media and media storage devices found on Mr. Cobb or in the car, without any reasonable limitation. *See United States v. Irving*, 347 F. Supp. 3d 615, 624 (D. Kan. 2018) (warrant

9

authorizing search and seizure of defendant's entire Facebook account was overbroad because it "could have been more limited in scope and time" related to the crimes charged). That meant law enforcement could search everything on any electronic device, which included information that was entirely unrelated to the suspected activity. The magistrate judge did not have legal basis for authorizing such an invasive search.

Indeed, Abeyta did not provide a rational reason to search for "any and all computers and storage media" for bank and finance records. In paragraph 7, he claims that "based on his training and experience," robbery evidence, such as "currency, weapons, and clothing worn during and after the robbery . . . are usually stored in the person's residence, garage, storage containers on the [person's] property, and in their vehicle[s]." In the next paragraph he alleges that this robbery evidence "can also be produced and/or stored on computers, digital media and other storage media." Yet he makes no effort to connect the two: he does not explain how these tangible items, namely, "currency, weapons and clothing" can be "produced and/or stored" on computers and other digital devices. That is because these tangible items cannot be physically produced and/or stored on digital devices. Thus, his affidavit was without "reasonable cause to believe that the specific 'things' to be searched for and seized" here, currency, weapons, clothing, "are located on the property to which entry is sought," that is computers, digital media and other storage media. *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978).

Further, Abeyta's affidavit was devoid of any particularized information that

10

M. Cobb would have any of the devices listed in the affidavit. He also did not explain why such items would be located in the car and would be evidence of bank robbery. No connection between an alleged robbery and Mr. Cobb's phone or other device was ever shown and no specific facts were presented that anything related to a robbery would be found on any such device.

For a warrant to be valid, the Fourth Amendment requires that it be supported by probable cause and specifically identify the evidence law enforcement intends to seize. Supreme Court precedent makes clear that mere suspicion that a person has broken the law does not give officers probable cause to search, "unrestrained," any property or conveyance in which the person may be found for any "evidence of criminal activity." *Riley v. California*, 573 U.S. 373, 403 (2014); *see also Andresen v. Maryland*, 427 U.S. 463, 480 (1976) ("General warrants of course, are prohibited by the Fourth Amendment. The problem is not that of intrusion per se, but a general exploratory rummaging in a person's belongings.") (quotation marks, citation omitted). Here, the warrant is an example of the sort of general searches that the Fourth Amendment was created to prevent.

Officers were investigating a "robbery" in which a man, purportedly with a gun, took money from a technician who was servicing a bank's ATM. However, according to the warrant affidavit, law enforcement wanted to search for and seize any computers, storage and digital media. But the "robbery" did not involve a computer or digital media. And Abeyta's affidavat did not provide any reason to suspect that Mr. Cobb owned or used any digital media or devices. Nor did the

affidavit explain how he would create incriminating evidence that could be contained in such media if no one had ever seen Mr. Cobb with these devices. Thus, on its face, the warrant not only lacks probable cause, it also is unconstitutionally broad in its general authorization permitting officers to seize all "digital media."

Ultimately, the warrant's overbreadth is demonstrated by what the affidavit in support of the search does not include:

- any reason to believe that Mr. Cobb actually owned or used a computer, a smart phone, electronic tablet or any digital or storage media;

- any reason to believe that Mr. Cobb would have placed or retained any incriminating information on any device when there was no evidence he had such a device;

- any reason to believe that if Mr. Cobb was the robber that he had such a device with him and recorded the interaction with the technician or took photos, made notes or a voice recording of that interaction; and

- any reason to believe even if he had such devices those devices would have been of any evidentiary value, specifically that officers could have recovered any information deleted or erased off the devices (especially when there was no allegation that such information generally is retained).

If the warrant affidavit here adequately defines probable cause to search digital media then over broad searches will become commonplace. Anytime police have reason to suspect a person is involved in any crime, they then will have probable cause to search electronic devices found in any place that the suspect may have been merely based on the allegation that criminals generally communicate with and make recordings on such devices. The search will be authorized even when the affidavit does not identify a single instance of the suspect ever having

12

used any of those devices for a criminal purpose. Such a result would be inconsistent with Supreme Court precedent and would sanction exactly the sort of rummaging around the Fourth Amendment prohibits. *Cf. Riley*, 573 U.S. at 386-403 (because of "vast quantities" of personal and private information stored in cell phones, Fourth Amendment's specificity requirements must be followed before police may search and seize digital contents). Here, law enforcement had no reason to believe that any of the digital media items or devices they sought existed or were ever possessed by Mr. Cobb, let alone stored in the car he was driving four days after money was taken from the technician. The warrant lacked probable cause and any evidence seized under the authority of that warrant must be suppressed.

      **a.**    **The warrant did not authorize the seizure of cellular telephones**.

In the warrant, the magistrate judge permitted law enforcement to seize 7 items from the car. The listed items did not include cellular telephones, nor digital media. Although the warrant defines "digital media" to include "smartphones" and "iphones," it did not identify "digital media" nor cellular telephones as items law enforcement was permitted to take from the car. As the warrant did not specifically direct officers to search for or seize cellular telephones, when they did take the phone from the car, the officers exceeded the scope of the warrant and that seizure was unconstitutional.

The Fourth Amendment's particularity requirement is intended to prevent general, exploratory searches. *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). Thus,

"the Fourth Amendment mandates that search warrants particularly describe . . . the things to be seized." *United States v. Medlin*, 842 F.2d 1194, 1199 (10th Cir. 1988) (quotation marks, citation omitted). The scope of the warrant is determined by the magistrate judge issuing the warrant and not by the officers requesting the warrant, nor those executing it. *Payton v. New York*, 445 U.S. 573, 586 n. 24 (1980). That means that officers are constrained by the Fourth Amendment to execute the search "strictly within the bounds set by the warrant." *Bivens v. Six Unknown Agents*, 403 U.S. 388, 394 n. 7 (1971); *see also Garrison*, 480 U.S. at 84 (Fourth Amendment expects search pursuant to warrant "will be carefully tailored to its justification . . ."). Here, the officers' seizure of a cellular telephone was outside the scope of the warrant because the warrant did not specifically identify a cellular telephone as an item for which there was probable cause to search, let alone seize. When officers exceed the scope of a search warrant in seizing property, as they did here, "the particularity requirement is undermined" and the warrant "is transformed into a general warrant requiring suppression of [the] evidence seized under that warrant." *Medlin*, 842 F.2d at 1199.

Because the search warrant lacked probable cause and particularity, and because it did not authorize the seizure of cellular telephones, the search of the car and Mr. Cobb's phone was unlawful, and all of the evidence discovered as a result must be suppressed. *Wong Sun*, 371 U.S. at 487-88.

Although the government opposes this motion, Mr. Cobb respectfully

requests an evidentiary hearing to resolve the issues he raises here.

In connection with the requested evidentiary hearing and if the government does not otherwise disclose the information, Mr. Cobb further requests, pursuant to Rule 26.2 of the Federal Rules of Criminal Procedure, that it disclose to defense counsel at least forty-eight hours before the hearing any statements, including grand jury testimony, of suppression hearing witnesses. This request is made to avoid delays in the conduct of the hearing, which necessarily will be longer if counsel has to seek recesses to review materials provided by the government at the hearing. Mr. Cobb expressly reserves the right to raise any other motions and arguments based on the facts and evidence that may arise during any evidentiary hearings in this case.

Mr. Cobb asks that the Court set this matter for evidentiary hearing and, at the conclusion thereof and after the opportunity for supplemental argument or briefing, as may be necessary, enter an order granting Mr. Cobb's Motion to Suppress and providing for such other and further relief as the Court deems just and proper.

    Respectfully submitted,

    FEDERAL PUBLIC DEFENDER
    111 Lomas NW, Suite 501
    Albuquerque, NM 87102
    (505) 346-2489
    daniel_snyder@fd.org

    */s/ Daniel B. Snyder*
    Daniel B. Snyder
    Assistant Federal Public Defender